IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| EMILY STRICKLAND SNIDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-3245-M |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Emily Strickland Snider, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;

   (2)   whether she has a severe impairment;

   (3)   whether her impairment meets or equals one listed by the Secretary;

   (4)   whether the claimant can perform her past work; and

   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The

Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES
### SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit objective medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a]

4

claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 39 years old at the time of ALJ Jerome L. Munford's decision. The plaintiff claims disability from May 14, 2003, when she injured her back while working. The ALJ found that the plaintiff has the following severe impairments: postoperative radiculitis; lumbar degenerative disc disease; and obesity. [R. 29].  The ALJ found the plaintiff disabled for the period of May 14, 2003, through May 7, 2007, but found that for the period since May 8, 2007, there has been medical improvement in her condition, and that she now has the residual functional capacity to perform a reduced range of sedentary work. Id.  Accordingly, the ALJ found that the plaintiff's disability ended on May 8, 2007. [R. 30].

The medical evidence reveals that on January 31, 2005, she underwent a lateral recess decompression at L4-5 on the left and exploration of the L4 and L5 nerve roots on the left by Thomas A. Wilson, Jr., M.D. [R. 132].  Afterwards she underwent physical therapy.  On May 2, 2005, an MRI of the lumbar spine showed the previous left laminectomy at L4-5 with no recurrent disc disease, and a mild bulging of the disc with a

shallow, focal protrusion centrally at L5-S1 with a continued slight deformity along the anteromedial aspect of the S1 nerve rootlet on the left. [R. 146]. Dr. Wilson recommended a series of epidural blocks.

On July 25, 2005, she told Dr. Wilson she only had temporary relief with the injections. Dr. Wilson did not think further surgery was indicated, and referred her to pain management. [R. 228]. In August 2005 she began treatment with Timothy R. Bunker, M.D., of the Birmingham Pain Center. Dr. Bunker treated her from August 19, 2005, through May 20, 2008. [R. 153-197].

On May 8, 2007, the plaintiff was evaluated by Adam Nortick, M.D., as part of her worker's compensation claim:

> Ms. Snider stated that she can sit about 15 minutes up to 30 minutes. Ms. Snider stated that she drives some but has to stop frequently. Ms. Snider stated she has to have help in getting in and out of the tub, usually takes showers. Ms. Snider stated that she does limited cooking. Ms. Snider stated that she can pull weeds. Ms. Snider stated that she tries to walk every day. Ms. Snider stated that she can sit in her recliner, using the heating pad. Ms. Snider stated that she use [sic] to be a volunteer fire fighter.

[R. 245]. The ALJ discussed Dr. Nortick's findings:

> Dr. Nortick reported that the claimant was in a light work classification with frequent standing allowing a five-minute break every hour, frequent sitting allowing a five-minute break every hour, frequent walking allowing a five-minute break every hour, occasional bending and squatting, no climbing, crawling, and crouching, constant handling, occasional stairs, carrying 10 pounds frequently, and lifting 15 pounds frequently. He reported that the claimant's psychometric testing was valid, with issues with depression, her clinical exam was valid, and her functional capacity evaluation was valid.

[R. 22].

In a February 25, 2008, "Worker's Compensation Followup Office Visit" with Dr. Bunker, she complained of seven to eight out of 10 pain. [R. 282]. Dr. Bunker said:

> She is still having increased pain, decreased activity, still has not been able to get the plain films of the lumbar spine approved. She still needs her Ambien for the insomnia secondary to pain, Lyrica seems to help. I would like to see if we can get the Ambien approved because her sleep dysfunction is secondary to pain.
>
> Diagnoses of lumbar postoperative radiculopathy/radiculitis/status post laminectomy, which was performed in January of 2005. She has few radicular symptoms. Most of her pain seems to be mechanical and seems to have gotten worse. She seems to take her medications appropriately but [does] not get enough help for the mechanical back pain.
>
> We will increase the OxyContin to 40 mg instead of 30 mg q.8h., continue with the Roxicodone 15 mg p.o. b.i.d. and keep the other medication the same for right now. We will see the patient back in two to four weeks. Hopefully [sic] in the meantime we can get her a [sic] lumbar spine films approved from her Workers' Compensation carrier. I thus think this is very important as the patient remains unable to participate in gainful employment due to pain.

[R. 282-284].

On May 24, 2008, a deposition of Dr. Bunker was taken in connection with her worker's compensation case. At the deposition, Dr. Bunker reviewed his treatment records and was asked:

> Q:   You have been treating her for two and a half years now, talked to her, observed her 20 or 30 times. Do you have an opinion, within reasonable medical certainty, whether she's likely to get much better or whether at this point, the treatment is just going to help her get through the day?

9

> A: At this point, I feel that she's going to stay – stay pretty much about the same.
>
> Q: And I know I asked you about this as of January 2008, but do you have an opinion, within reasonable medical certainty, whether she's capable of, given her chronic pain and radiculopathy, of holding gainful full-time employment?
>
> MR. HENDERSON: Object to the form.
>
> A: I stated I felt that she remains unable to participate in gainful employment secondary to pain.
>
> Q: (BY MR. YOUNG:) Do you see that, within reason, improving much?
>
> A: No. I don't see her improving much at all. She hasn't improved in two and a half years.

[R. 351-352].

Dr. Bunker also testified about the plaintiff's functional capacity evaluation performed by Dr. Nortick:

> Q: Okay. During this May 23, 2007 visit, what was she reporting to you?
>
> A: Yeah. She told me that she went for a functional capacity evaluation about three weeks prior to this visit and that the FCE actually made her worse. She was having increasing pain and muscle spasms in the lower back. And at this point, she was complaining of intermittent urinary incontinence.
>
> Q: Okay. What is your understanding of what a functional capacity evaluation involves?
>
> A: That's like a three to four-hour examination by a physical therapist who puts her through the paces that actually observe her and try to see what her maximal limits are. She how much she can lift maximally. Perform certain tasks to see how well she can do them.

10

> And they look for signs of actually what she can do as well as consistency. So they're looking to see if there's any malingering or faking stuff, too. And that's to try to get an idea more than what I can gather in 20 minutes of examining a patient, it's more of a prolonged view of the patient to look for consistency. And to figure out at what level of employment could she possibly tolerate.
>
> Q:  Okay. Is it more a snapshot of what her maximum limits are, or is it really a good reflection of what she can do over 40 hours a week?
>
> A:  It's more what the maximal is and then you'll have to back down from that. Especially if they report that they're hurting afterwards. Because it's not normal for someone to work three hours and then be hurting for several weeks after that. It's not a normal thing.
>
> Q:  Okay. And in this case you reported a pretty severe exacerbation of her pain that she related to the evaluation?
>
> A:  Yes.

[R. 334-336]. Dr. Bunker testified that notwithstanding the results of the FCE by Dr. Nortick, he still felt the plaintiff was not capable of sustaining employment. [R. 348]. "Personally, I think this patient is going to have a hard time holding down a job and she's going to have a high absenteeism." [R. 373].

As stated earlier, the ALJ found that the plaintiff was disabled from May 14, 2003, through May 7, 2007, the date of Dr. Nortick's FCE. [R. 25]. He found that there had been medical improvement in the plaintiff's condition since May 8, 2007, and the plaintiff is capable of performing a less than full range of sedentary work. [R. 29]. The ALJ gave the following reasons for adopting Dr. Nortick's opinion over the opinion of Dr. Bunker:

> [Dr. Nortick's] report indicated that the claimant was capable of performing a range of light work.  The report was based on objective testing to determine the claimant's functional capacity, testing which the claimant's pain management specialist, Dr. Bunker, indicated in his deposition that he had not performed.  Although Dr. Bunker indicated in his deposition that the claimant had had no improvement in her pain since he began treating her in 2005, <u>her performance on the functional capacity evaluation on May 8, 2007 indicates that she must have had improvement in her pain by that date</u>.
>
> Dr. Bunker reported in his deposition that the claimant was unable to perform even sedentary work on a full-time basis, but this opinion is inconsistent with the claimant's performance on the functional capacity evaluation on May 8, 2007.

[R. 26].(emphasis added)

  The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating pain specialist are not supported by substantial evidence.   Dr. Bunker is a specialist in the field of pain management, and his opinion is entitled to more weight in this area.[1]   In light of Dr. Bunker's testimony that the one-time FCE performed by Dr. Nortick actually resulted in severe exacerbation of the plaintiff's pain and other symptoms, including lumbar muscle spasms, the ALJ's conclusion that the plaintiff "must have had improvement in her pain by" Dr. Nortick's examination is pure speculation. The presence of muscle spasms is objective evidence of pain itself.  The relationship between a claimant's subjective symptoms and medical evidence is explained in Social Security

---

[1] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist."  20 C.F.R. § 404.1527(d)5)

Ruling 96-7p, <u>Disability Claims:  Assessing the Credibility of an Individual's Statements</u>, which contains the following:

> Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; <u>however, their effects can often be clinically observed</u>.  The regulations at 20 CFR 404.1529(c)(2) and 416.929(c)(2) provide that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of" an individual's symptoms and the effects those symptoms may have on the individual's ability to function.  The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from or be associated with, the symptom of pain.  When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects.

SSR 96-7p at 6 (emphasis added).

Moreover, the medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  <u>See</u> SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988).

13

> . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his <u>private or personal capacity</u>; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).  The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating physician, Dr. Bunker.  At the ALJ hearing, the vocational expert testified that a person with the plaintiff's limitations as testified to by Dr. Bunker could not perform any job that exists in the national economy. [R. 434].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  <u>Id.</u>

DONE and ORDERED 17 May 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.